## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 10-60556-CIV-MORENO/TORRES

MASCARO AVIATION, L.L.C., et al.,

            Plaintiffs,

vs.

DIAMOND   AIRCRAFT   INDUSTRIES,
INC.,

            Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

This matter is before the Court on Defendant Diamond Aircraft Industries, Inc.'s Motion to Dismiss or, in the alternative, Motion to Drop Parties and Motion to Strike Request for Attorneys' Fees [D.E. 31].[1] This Court has reviewed the motion, Plaintiffs' response [D.E. 35],[2] Defendant's reply [D.E. 36], related authorities submitted by the parties and the record in the case. For the following reasons, the motion to dismiss should be granted in part and denied in part. This Court recommends that Plaintiffs' complaint be dismissed, in its entirety, with instructions to re-plead their claims as outlined below.

_____

[1] The Honorable Federico A. Moreno referred this case to the undersigned for all pre-trial matters. [D.E. 37].

[2] Initially, this complaint included twenty (20) Plaintiffs. However, Plaintiff Morris Aviation, LLC voluntarily dropped out of this suit to pursue its claims in the Western District of Kentucky, Case No. 3:09-CV-644-S. *See* [D.E. 35 at n.1].

## I.   BACKGROUND

This fraud dispute arises out of alleged misrepresentations and omissions relating to various sales of Diamond Aircraft Industries, Inc. ("Diamond")'s DA42 Aircraft ("Aircraft").  Diamond is a Canadian corporation based in Ontario, Canada. Diamond sells its aircrafts in the United States through various "authorized distributors" who purchase aircrafts from Diamond and then sell them domestically to buyers, including the Plaintiffs. [D.E. 1 at ¶ 37; D.E.31-15 to 31-34]. Of its "authorized distributors", Diamond's primary distributor for the U.S. aircraft market is Premier Aircraft Sales, Inc., ("Premier") a Florida corporation based in Fort Lauderdale, Florida. [D.E. at ¶ 23].

Plaintiffs are comprised of a group of nineteen (19) separate, unrelated individuals or entities who purchased one or more Aircrafts between May 2005 and April 2008. *Id.* at ¶¶ 1, 3-20, 147, 160.[3]  Thielert Aircraft Engines G.m.b.H ("TAE"), a German company, manufactured the engines utilized in these Aircrafts. *Id.* at ¶ 25. Diamond's Aircrafts were designed and sold exclusively with TAE's engines. *Id.*

According to Plaintiffs and, importantly, unbeknownst to them at all times relevant, TAE began experiencing financial problems in 2006.  In November 2006, TAE came under investigation from German authorities for attempting to obtain bank loans and stock certificates under false pretenses. *Id.* at ¶ 27.  Then, in early 2007, German

---

[3]While the complaint names nineteen (19) Plaintiffs, it actually involves sixteen (16) transactions because Plaintiffs Applied Science Services Corporation and Rellim Enterprises, LLC and Plaintiffs S&D Seven LLC and KAL Venture Partners purchased their Aircrafts together.

authorities launched a second investigation into fraudulent activity perpetrated by TAE's founder Frank Thielert and Chairman of the Board Georg A. Witthun for fraud and falsification of evidence. *Id.* at 28.  Thereafter, TAE fell into insolvency and, on April 28, 2008, all of TAE's engine warranties (at least as applicable here) were voided. *Id.* at 35.

Plaintiffs allege that, because their Aircraft engines are now without a manufacturer's warranty, their respective Aircrafts are worth substantially less than they were at the time of purchase due to an overall loss of market value, increased maintenance costs and replacement costs. *Id.* at ¶ 212.  Moreover, TAE's engines contain "new" and "untested" technology and, as such, these engines require a greater frequency of maintenance obligations and higher replacement costs which, at the time of sale, made TAE's engine warranty an essential component of each Plaintiff's purchase. *Id.* at ¶ 49.  As noted, Plaintiffs' complaint sounds in fraud and asserts three separate, yet related, state law claims for: 1) fraudulent/negligent misrepresentation; 2) fraudulent concealment; and, 3) punitive damages.

The overall crux of Plaintiffs' complaint is that Diamond knew, or should have known, about TAE's financial troubles and that Diamond - by itself or through its "authorized distributors" - was obligated to disclose TAE's financial troubles to Plaintiffs.  Plaintiffs also assert that Diamond "falsely represented to Plaintiffs the quality and reliability of TAE, the TAE engine, and TAE's engine warranty." *Id.* at ¶ 205.  At the time of these representations, Plaintiffs charge Diamond with knowing of TAE's "serious financial instability" because "Diamond formed a close business

3

relationship with TAE." *Id*. at ¶ 29.  Furthermore, this "relationship" should have provided Diamond with knowledge of the purported fraud investigations and TAE's underlying financial problems. *Id*. at ¶ 206.  In sum, Plaintiffs assert that Diamond vouched for the reliability of TAE's warranties when Diamond knew (or should have known) that TAE ultimately would fall into insolvency and void the engine warranties.

Turning to the fraudulent concealment claim, which mostly re-casts the misrepresentation claim in a different light, Plaintiffs assert that Diamond failed to inform Plaintiffs of TAE's financial instability.  Plaintiffs allege that Diamond possessed "superior knowledge concerning TAE's financial condition and had a duty to reveal that knowledge to Plaintiffs." *Id*. at 215.  In addition, Plaintiffs assert a new allegation to support this claim: "in order to deceive and induce Plaintiffs" Diamond failed to disclose that in 2005 it had "begun development" of its own engine to replace the TAE engine.  This decision, Plaintiffs argue, demonstrates that Diamond knew about TAE's financial troubles. *Id*.  at ¶¶ 32-33.

Diamond's motion raises several procedural and substantive grounds for dismissal.  Procedurally, Diamond moves to dismiss this entire action to Ontario, Canada based on the federal doctrine of *forum non conveniens,* or, in the alternative, to dismiss (or transfer) for improper venue pursuant to 28 U.S.C. § 1406(a).  Next, Diamond asserts that the Plaintiffs are misjoined and moves to drop all but Plaintiff Mascaro Aviation, LLC from this action. *See* Fed. R. Civ. P. 20(a); 21.  Substantively, Diamond moves to dismiss Counts I-III for failure to properly plead a cause of action

pursuant to Fed. R. Civ. P. 12(b)(6) and, additionally, moves to dismiss Counts I and II for failure to satisfy Fed. R. Civ. P. 9(b). And, finally, Diamond moves to strike Plaintiffs' demand for attorneys' fees pursuant to Fed. R. Civ. P. 12(f).

As set forth below, we recommend that Diamond's motion to dismiss based on *Forum Non Conveniens* and improper venue grounds should be denied. As for the remaining claims, Plaintiffs' complaint should be dismissed without prejudice with leave to file an amended complaint  As detailed below, Plaintiffs' complaint violates Rules 8(a)(2) and 10(b) which, in the fraud context, further exacerbates the Court's efforts to resolve the substantive issues raised. Moreover, these deficiencies raise questions as to whether each Plaintiff can plead its individual fraud claims with sufficient particularity pursuant to Rule 9(b). Thus, for now, the Court recommends that Diamond's motion be granted, but in the re-tooled manner stated herein, with direction to Plaintiffs to replead their complaint in compliance with Fed. R. Civ. P. 8(a)(2) and 10(b).

## II.   ANALYSIS

### A.   *Forum Non Conveniens and Venue*

Diamond seeks dismissal on *forum non conveniens* grounds. The doctrine of *forum non conveniens* permits a court to decline to exercise jurisdiction when it appears that the convenience of the parties and the interests of justice weigh in favor of trying the action in an alternative forum. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (1981).

In deciding whether to dismiss a case on *forum non conveniens* grounds, courts must examine (1) the availability of an alternative and adequate forum; (2) the appropriate deference to be given to the plaintiff's choice of forum; (3) the private interest factors; and (4) the public interest factors. *Piper Aircraft*, 454 U.S. at 257-261. A court must consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing the plaintiff's initial choice of forum. *C.A. La Seguridad v. Transytur Line,* 707 F.2d 1304, 1307 (11th Cir. 1983). If the court finds this balance of private interests to be in equipoise or near equipoise, it must then determine whether or not factors of public interest tip the balance in favor of a trial in a foreign forum. *Id.* Although "private factors are generally considered more important" than public ones, courts should consider both public and private factors "in all cases." *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir. 2001). The defendant must present "positive evidence of unusually extreme circumstances" and should thoroughly convince the court "that material injustice is manifest" before the court will deny a U.S. citizen access to courts in our country. *Aldana v. Del Monte Fresh Produce, N.A., Inc.,* 578 F.3d 1283, 1303 (11th Cir. 2009) (quoting *C.A. La Seguridad*, 707 F.2d at 1308 n.7); *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097, 1101 (11th Cir. 2004).

### 1. *Availability of Adequate Alternative Forum*

The defendant has the initial burden of establishing that an adequate alternative forum exists with jurisdiction over the entire case. *C.A. La Seguridad*, 707 F.2d at 1307-09. "Ordinarily, [the adequate alternative forum] requirement will be

satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 255 n.22 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506-507 (1947)). Here, Diamond is a Canadian corporation that is amenable to process in Ontario, Canada. [D.E. 31-1, Egan Aff. ¶ 4]. Plaintiffs' silence in their response to this prong of the analysis - which the Court interprets as a non-objection - suggests that Canada is an adequate alternative forum for this entire case. [D.E. 35]. Indeed, an alternative forum is "presumed" adequate unless the plaintiff makes some showing to the contrary. *Leon*, 251 F.3d. at 1312. Hence, as Plaintiffs fail to make a showing that Ontario, Canada is an otherwise inadequate forum, we conclude that Canada provides Plaintiffs with an adequate alternative forum. With that resolved, we now turn to the private and public factors to determine whether this action should be dismissed to Canada, as per *Piper Aircraft*, 454 U.S. at 257.

### 2.   *Private Interest Factors*

In weighing the private interests of the case, we look at several factors, including "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508. In considering these factors, we must weigh the relative advantages and disadvantages of each potential forum, and not simply consider the advantages or disadvantages of one or the other. *C.A. La Seguridad,* 707 F.2d at 1308.

When considering the private factors, the Court must also give a strong presumption in favor of the Plaintiffs' initial forum choice. As the Supreme Court explained in *Gulf Oil.*, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  330 U.S. at 508.  The Eleventh Circuit elaborated further: "this presumption in favor of plaintiffs' initial forum choice in balancing the private interests is at its strongest when the plaintiffs are citizens, residents, or corporations of the country." *SME Racks*, 382 F.3d at 1101.  To overcome this presumption, the court must "'require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'" *Id.* (quoting *C.A. La Seguridad,* 707 F.2d at 1308 n.7).

With this highest deference to Plaintiffs' forum choice in mind, Diamond (in totality) supports its position that the private factors favor dismissal by merely reciting the factors delineated in *Gulf Oil* (above) and then concluding, without additional support, that Ontario, Canada is a more convenient forum because:

> All discovery related to the claim for fraudulent concealment, for example, would presumably relate to either Diamond in Canada or TAE in Germany.  Access to those sources of proof would be equally (if not more) convenient if the case were litigated in Canada.  Ontario, Canada courts have the ability (i) to require production of any documents in the possession of parties to an action or in the possession of non-parties in Canada which are subject to discovery and (ii) to compel testimony by witnesses present in Canada

8

[D.E. 31 at 10] (citations omitted).

Assuming, for a moment, that the fraudulent concealment evidence is more accessible in Canada or German, which the Court doubts, we find Diamond's argument unpersuasive. Indeed, Diamond fails to identify any actual documentary evidence that is more accessible or even maintained in Canada. Putting this point aside, Diamond's assertion still lacks any indicia that a majority of the sources of proof for the remaining fraud claims is more easily accessible in Canada (or Germany) as opposed to the United States. Furthermore, accepting Plaintiffs' complaint as true (which we must), *all* of the sixteen (16) separate Aircraft transactions and, therefore, the purported fraudulent misrepresentations, occurred in the United States. *See, e.g.,* [D.E. 1 at ¶¶ 53-202]. Thus, it would logically follow that the vast majority of the sources of proof are accessible in the Unites States.

The private factor relating to witnesses also weighs heavily against dismissal to Canada. Again, while arguably some relevant witnesses may reside in Canada, those witnesses (much like the documents) are likely under the control (or are in the possession) of Diamond, making compulsive process wholly unnecessary. Turning to Diamond's argument specifically, it fails to identify a single non-party witness who resides in Canada and, therefore, would warrant dismissal to that forum. To the contrary, the overwhelming majority of relevant non-party witnesses are in the United States. Such likely witnesses include the various "authorized distributors" and their employees who Plaintiffs allege participated in the fraud. Thus,

9

altogether, this forum is more convenient and can compel a greater number of relevant non-party witnesses.[4]

Ultimately, the Eleventh Circuit charges Diamond with demonstrating that "all relevant factors of private interest favor the alterative forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice." *Aldana*, 578 F.3d at 1290. Diamond fails to satisfy its burden of setting forth "positive evidence of unusually extreme circumstances" sufficient to overcome the strong presumption in favor of Plaintiffs' choice of forum in this case. *See Ward v. Kerzner Intern. Hotels Ltd.*, No. 03-23087-CIV-Jordan, 2005 WL 2456191, at *4 (S.D. Fla. Mar. 30, 2005). Simply put, we are not "thoroughly convinced that material injustice is manifest" to compel denying  Plaintiffs access to the United States' courts.

### 3.   *Public Interest Factors*

When the balance of the private interest factors are in or near equipoise, the court must also consider public interest factors. While we find that the private interest factors weigh against dismissal, we will also consider the public interest factors. These factors include:  (a) court congestion and jury duty generated by controversies having no relation to the forum; (b) the desirability of having localized controversies decided at home; and, (c) the difficulties attendant resolving conflict-of-

---

[4]Arguably, as Plaintiffs allege the "authorized distributors" are Diamond's agents, they may be under Diamond's "control." However, without commenting on the agency issue, Plaintiffs have not named them to this lawsuit and, therefore, they are "non-parties."

laws problems and applying foreign law.  *See C.A. La Seguridad,* 707 F.2d at 1307

(citing *Gulf Oil*, 330 U.S. at 508-9).  Diamond's argument recites the public interest

factors delineated by *Gulf Oil* and then concludes, again without supporting

argument, that Canada is a more appropriate forum because:

> The civil courts of Ontario, Canada operate normally and
> are not congested.  Ontario, Canada undoubtedly has more
> connection with the litigation than Florida because
> Diamond resides in Canada, while only two of the [nineteen]
> Plaintiffs reside in Florida.  As to the applicable law, <u>many</u>
> states' laws apply to the misrepresentation claim because
> the misrepresentation occurred (if at all) in multiple
> locations.  Canadian law likely would apply to the claim for
> fraudulent concealment because  Diamond a Canadian
> company, is alleged to have failed to disclose particular
> information.  Ontario, Canada courts apply United States
> law when appropriate.

[D.E. 31 at 10-11] (citations omitted) (emphasis in original).

We find Diamond's conclusory argument no more persuasive than the last

one.  First,"there is a strong federal interest in making sure that plaintiffs who are

United States citizens generally get to choose an American forum for bringing suit,

rather than having their case relegated to a foreign jurisdiction." *SME Racks,* 382

F.3d at 1104.  Curiously, Diamond asserts that Canada has more interest to this

case because Diamond resides there and only *two* Plaintiffs reside in Florida.  This

argument makes little sense because, strictly speaking, two is greater than one.

Further, this contention is misplaced generally because the "connection" or "localized

interest" factor is broader and considers whether a "connection exists between the

parties, the case and *the United States*." *Membrano v. Vosta Crociero, S.p.A.*, 347 F.

11

Supp. 2d 1289, 1299 (S.D. Fla. 2004) (quoting *Hernandez v. CSCS Int'l, N.V.*, No. 03-20302-CIV, at *7 (S.D. Fla. Dec. 8, 2003)) (emphasis added).  Florida has an interest because two parties reside here, "authorized distributor" Premier resides here, and five of the transactions occurred here.  *See, e.g., Morse v. Sun Intern. Hotels, Ltd.*, No. 98-7451-Civ, 2001 WL 34874967, at *7 (S.D. Fla. Feb. 26, 2001).  Furthermore, when dealing with a foreign defendant the relevant forum is not, for instance, Florida, but it is the Unites States as a whole. *See Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 1271 (11th Cir. 2009).  Here, each Plaintiff is a United States entity and resides in the United States.  Thus, when compared to Diamond - the sole foreign defendant - this factor provides little to no support for referring all nineteen United States Plaintiffs to a Canadian court.  *See Guidi v. Inter-Continental Hotels Corp.,* 224 F.3d 142, 146-7 (2d Cir. 2000) (home forum is United States generally); *see also Reid-Walen v. Hansen*, 933 F.2d 1390, 1394 (8th Cir. 1991) (same).

Next, the administrative difficulty and court congestion factor "has been properly accorded little or no weight in the [public interest factors] analysis." *Morse,* 2001 WL 34874967, at *6; *see also Sun Trust Bank v. Sun Intern. Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1266 (S.D. Fla. 2001).  Further, while the application of foreign law is an important factor considered in weighing the public interests, this factor is not dispositive because federal courts are often required to decide issues of foreign law.  *See Ward*, 2005 WL 2456191, at *5 (citing *SME Racks*, 382 F.3d at 1105 n.11).  Ultimately, Diamond fails to support its argument that the public factors warrant

litigating this matter in Canada and Diamond's conclusory reliance on the *Gulf Oil* public interest factors - without analysis or case law - fails to persuade the Court otherwise.

We have thus weighed the relevant considerations but Diamond has not convinced us that manifest injustice will result if this case proceeds to trial in this forum. We do not find that the interests of justice and convenience of the parties weigh significantly more in favor of trying this action in Ontario, Canada. We conclude that Plaintiffs' choice of forum should not be disturbed and, therefore, Diamond's motion to dismiss on *forum non conveniens* grounds should be denied.

Alternatively, Diamond argues that this matter should be dismissed (or transferred) for improper venue pursuant to 28 U.S.C. § 1406(a). Diamond asserts that this venue is improper under 28 U.S.C. § 1391(a) because: 1) Diamond does not reside in this venue and 2) "a substantial part of the events or omissions giving rise" to Plaintiffs' claims did not occur in this venue. [D.E. 31 at 11]. However, as Plaintiffs' complaint shows: 1) two Plaintiffs purchased their Aircraft in this forum and 2) Diamond's alleged primary "authorized distributor" Premier participated in at least five Aircraft sales relevant to this complaint. [D.E. 1 at ¶¶ 53, 133, 146, 169, 194]. Therefore, the Court finds these allegations sufficient to establish venue under §1391(a)(2) because "a substantial part of the events or omissions giving rise" to Plaintiffs' claims occurred here. Diamond's conclusory contention that this forum is improper is unpersuasive; indeed, the argument is without factual support, analogous case law, or even a suggestion as to a more convenient transferee venue.

Accordingly, Diamond's motion to dismiss for improper venue should be denied. *See*, e.g., *TRS & Associates, Inc. v. Document Imaging Technologies, Inc.*, No. 1:08-CV-03264-JOF, 2009 WL 2778256, at *9 (N.D. Ga. Aug. 25, 2009) (denying defendant's motion to dismiss, or transfer, for improper venue where defendant provides no support for its position that venue is improper); *cf., American Aircraft Sales Intern., Inc. v. Airwarsaw, Inc.,* 55 F. Supp. 2d 1347, 1353 (M.D. Fla. 1999) (granting transfer because majority of witnesses, the aircraft in question, and evidence all reside in the alternative forum).

### B.   *Sufficient Pleading of Fraud Claims*

Diamond's motion, in the alternative, asks the Court to dismiss all nineteen Plaintiffs' fraud claims.  Diamond contends that, among other things, Plaintiffs fail to plead their claims with particularity pursuant to Fed. R. Civ. P. 9(b).  And, more specifically, that the complaint lacks the requisite "who, what, when, where and how" facts that identify the underlying misrepresentations.  In response, Plaintiffs assert that the complaint sufficiently outlines the factual circumstances of the misrepresentations.

At the outset, we conclude that Plaintiffs' complaint is indicative of an impermissible "shotgun pleading" because it, at a minimum, re-incorporates each allegation into each subsequent claim.  *See, e.g., Wagner v. First Horizon Pharmaceutical Corp.,* 464 F.3d 1273, 1279 (11th Cir. 2006) (a complaint "incorporat[ing] every antecedent allegation by reference into each subsequent claim for relief" is a shotgun pleading).  The Eleventh Circuit has warned against this

practice and thoroughly outlined its negative consequences in *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979-984 (11th Cir. 2008).  Indeed, the Eleventh Circuit urges District Courts to dismiss, *sua sponte*, this sort of pleading. *Id.* Following that mandate, and for the reasons described below, Plaintiffs' complaint should be dismissed.

Structurally, the complaint is composed of three main parts: 1) general allegations [D.E. 1 at ¶¶ 1-52] ("general allegations"); 2) specific allegations (*id.* at ¶¶ 53-203) ("specific allegations"); and, 3) Plaintiffs' three claims for relief. *Id.* at ¶¶ 204-225.  The general allegations set forth facts that, in theory, apply to each Plaintiff equally, including: 1) general facts; 2) Diamond's agency relationship with its "authorized distributors"; and, 3) the TAE engine warranty (including certain representations made by "Diamond").  Next, the specific allegations discuss each Plaintiff's unique transaction, together with Diamond's (or its "authorized distributors") specific misrepresentations.  Lastly, Plaintiffs assert their three counts by incorporating all antecedent allegations into each subsequent count.  The result, however, is a long convoluted statement of facts, with conflicting allegations, that attempts to combine sixteen Aircraft transactions for nineteen Plaintiffs into single counts in violation of Fed. R. Civ. P. 8(a)(2) and 10(b). *See, e.g., JP Morgan Chase Bank, N.A. v. Hayhurst Mortgage, Inc.,* No. 10-21501-CIV, 2010 WL 2949573 (S.D. Fla. July 26, 2010) (concluding complaint is a "shotgun pleading" because it combined six breach of contracts claims in a single count in violation of Rule 10(b)).

Rule (8)(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The point is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombl*y, 550 U.S. at 555. Rule 10(b), in turn, requires that the allegations of a claim must be made "in numbered paragraphs, each limited as far as practicable to a single set of circumstances ... [and] each claim founded upon a *separate transaction or occurrence* ... must be stated in a separate count." *See* Fed. R. Civ. P. 10(b) (emphasis added); *see also, generally, JP Morgan Chase Bank, N.A.*, 2010 WL 2949573 (dismissing complaint for, among other things, failing to separate transactions into separate claims pursuant to Rule 10(b)).

Plaintiffs allege Diamond (or its "authorized distributors") committed different species of fraud by disclosing or failing to disclose certain information during sixteen separate Aircraft transactions. However, instead of presenting each transaction and its corresponding misrepresentations into a separate count, Plaintiffs lump all 203 allegations for the nineteen Plaintiffs' sixteen Aircraft transactions together. They then label Count I: Fraudulent/Negligent Misrepresentation and reallege all preceding allegations as support for all nineteen Plaintiffs' separate fraud claims. Plaintiffs do the same for Counts II and III. The complaint does not distinctly parse out the underlying transactions into separate counts and, instead, incorporates an amalgamation of  general and specific allegations that, upon review, directly conflict with each other. Plaintiffs' complaint fails to separate the claims for relief when doing so would promote clarity, and thus

16

violates Rule 10(b).  In failing to comply with Rule 10(b), the complaint also fails to satisfy Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." *See JP Morgan Chase Bank, N.A.*, 2010 WL 2949573, at *2.

To illustrate, Plaintiffs argue, as outlined above and paraphrased here, that Diamond knew (or should have known) TAE's engine warranties would potentially be worthless and, therefore, this information was materially relevant to each Aircraft sale.  To that end, Plaintiffs make a general allegation that Diamond purportedly told each Plaintiff specific details of what the warranty would cover. The complaint alleges Diamond represented to each Plaintiff that the warranty would cover: 1) parts and labor at a prorated rate over 2,400 flights hours or twelve years; 2) various diagnostic/replacement costs for certain parts at 300 flight hour intervals; and 3) a replacement engine at the 1,000-1,200 flight hour mark at a prorata rate.  [D.E. 1 at ¶¶ 48-50].  Also, as these allegations represent the crux of Plaintiffs' argument they reappear (in substantially similar form) as the backbone of Count I in Paragraph ¶ 207.

However, a review of each Plaintiff's specific allegations demonstrates that no single Plaintiff alleges that Diamond or Diamond's "authorized distributors" actually made those specific representations during the sixteen Aircraft transactions.  To the contrary, the Plaintiffs allege a whole range of lesser (and nonuniform) representations or, probably fatally, no representations at all. *See, e.g., id.* at ¶¶ 56; 129-132; 160-68.  Thus, the contention in Plaintiffs' "general

allegations" that Diamond made those detailed warranty allegations to each Plaintiff cannot be squared with the specific allegations to the contrary. When a court is presented with a general and specific allegation that conflict, the court must ignore the general allegation. *See Pompano Helicopters, Inc. v. Westwood One, Inc.*, No. 07-61737-Civ, 2008 WL 906749, at *1 (S.D. Fla. Apr. 3, 2008) ("[w]here a general allegation of facts conflicts with a specific allegation of facts, the court finds that the specific allegation is to be taken as true for purposes of a motion to dismiss); *Thompson v. Florida Bar*, 526 F. Supp. 2d 1264, 1277 n.13 (S.D. Fla. 2007). Thus, as a result, the Court must ignore the assertion that Diamond made those specific, material warranty representations to each Plaintiff. And, without those foundational representations to support its counts (i.e., ¶ 207), Plaintiffs' fraud claims will fail.

This result is firmly rooted in the inherent ambiguity that Plaintiffs' complaint fosters due to its elongated statement of facts lumping together Plaintiffs' transactions. To be clear, the Court is not commenting here on whether one or more Plaintiffs may or may not be able to plead a cause of action for fraud because, at this juncture, it is unclear. Rather, the Court finds Plaintiffs' complaint includes ambiguities and conflicts that preclude Diamond from framing a response and this Court from resolving the issues raised. Therefore, Plaintiffs should separate the transactions and re-plead each under its own fraud count. By doing so, the relevant allegations will (in theory) correspond and relate to each unique transaction.

Now, turning to Rule 9(b), the Court's conclusion that Plaintiffs should re-plead their claims finds additional support when considering the mandates of this Rule. Fed. R. Civ. P. 9(b) provides that when alleging "fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[5] The purpose of this rule is to "alert[] defendants to the 'precise misconduct with which they are charged' and protect[] defendants 'against spurious charges of immoral and fraudulent behavior.'" *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-1 (11th Cir. 1997) (citation omitted); *see also BB in Tech. Co., Ltd. v. JAF, LLC*, 242 F.R.D. 632, 639 (S.D. Fla. 2007). As *Brooks* explained, Rule 9(b) may be satisfied by showing:

> (1) precisely what statements or omissions were made; (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.

116 F.3d 1364 at 1371 (citation omitted). The complaint must, therefore, allege as to each defendant the "who, what, when, where and how" about the fraud that occurred. *See, e.g., Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

---

[5]Negligent misrepresentation, like fraud, must be plead with specificity and meet the heightened pleading standard under Rule 9(b). *See, e.g., Sunoptic Techs, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, at *2 (M.D. Fla. Mar. 18, 2009); *Bailey v. Janssen Pharmaceutica, Inc.*, No. 06-80702-CIV-RYSKAMP/VITUNAC, 2006 WL 3665417, at *7 (S.D. Fla. Nov. 14, 2006).

As discussed above, Plaintiffs's complaint includes certain general and specific allegations that conflict and create ambiguity. On balance, each Plaintiff's "representations" consist of a lesser, nonuniform set of representations or, in some cases, no representations at all. *See* [D.E. 1 at ¶¶ 129-132]. And, as a result, the backbone "representations" supporting Plaintiffs' fraud claims are lost. However, by combining all sixteen transactions together, the complaint attempts to bootstrap the fraud claims together to, seemingly, allow each Plaintiff to borrow each other's lesser, nonuniform representations to create a claim in patchwork fashion. This plainly violates Rules 8(a) and 10(b). This approach further contravenes Rule 9(b)'s heightened pleading requirement, because, among other things, it ignores the requirement that each Plaintiff must support its fraud claims on a showing of individualized facts and proofs. *See, e.g., Bruhl v. Price Waterhousecoopers Intern.,* 257 F.R.D. 684, 691 (S.D. Fla. 2008); *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984) (each plaintiff needs to establish his or her reliance on defendants' misrepresentations).

Ultimately, because Plaintiffs have failed to set forth a short and plain statement of the facts that support their fraud claims and, furthermore, they have failed to separate their unique transactions into different claims, we recommend that Plaintiffs' complaint be dismissed with leave to file an amended complaint that cures these deficiencies. *See Davis*, 516 F.3d at 979-984 (11th Cir. 2008) (outlining the burdens imposed by a shotgun pleading and urging District Courts, if not raised by the parties, to preemptively correct this issue *sua sponte*); *Georgia Farm Bureau*

*Mutual Ins. Co. v. Great American Excess and Surplus Ins. Co.*, No. 1:06-CV-0696-JOF, 2007 WL 757816 (N.D. Ga. Mar. 8, 2007) (court, in its discretion, ordered plaintiffs to file a more definite statement complying with Rule 9(b), rather than dismissing the complaint).  Plaintiffs should be mindful of this opportunity to put Diamond (and the Court) on notice of the "who, what, when, where and how" facts relating to *each* Plaintiff's fraud claims to fully comport with Rule 9(b).  If Plaintiffs' counsel cannot do that for each Plaintiff then one must re-assess whether a fraud claim is viable for every Plaintiff that has been joined in this action.

### C.   *Misjoinder of Plaintiffs*

Diamond next moves to drop all but Plaintiff Mascaro Aviation, LLC from this action pursuant to Fed. R. Civ. P. 21.  According to Diamond, the nineteen Plaintiffs are misjoined under Rule 20 because: 1) they do not arise from the same transaction or occurrence or series of transactions or occurrences; and, 2) they do not share a common question or law or fact.  Plaintiffs counter and assert that their claims are properly joined because they arise from the same transaction or occurrence or series of transactions or occurrences due to a "company-wide policy of deceptive practices by Diamond and its agents."

Rule 20(a) states, in pertinent part, that a court may allow the permissive joinder of parties by a plaintiff if "(A) they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) if any question of law or fact to common to all these persons will arise in the action." *See* Fed. R. Civ. P. 20(a). Thus,

21

"[a] party seeking joinder of claimants under Rule 20 must establish two prerequisites: 1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and 2) some question of law or fact common to all persons seeking to be joined." *Alexander v. Fulton County*, 207 F. 3d 1303, 1323 (11th Cir. 2002) (*overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003)).

However, given our foregoing conclusions, we will not directly address Diamond's misjoinder argument at this stage. After Plaintiffs file their amended complaint, this misjoinder issue may become readily apparent to the parties, and the Court, and Diamond may thus re-raise the issue in response to the amended complaint. Alternatively, Diamond may choose to wait and raise this misjoinder issue after additional facts are fleshed out through discovery or otherwise. *See Molinos Valle Del Cibao, C. Por A. v. Lama*, Nos. 09-11153, 09-12857, 2011 WL 651996, at *7 (11th Cir. Feb. 24, 2011) (recognizing that the parties, or the court, may *at any time*, on just terms, add or drop a party). Regardless, we recommend that Diamond's motion to drop all but Plaintiff Mascaro Aviation, LLC should be denied without prejudice.

### D.  *Claim for Punitive Damages*

Plaintiffs are seeking in Count III punitive damages in connection with the "fraudulent conduct of Diamond" set forth in Counts I and II. Initially, Diamond asserted that Plaintiffs are required to comply with Fla. Stat. § 768.72, which requires a party to obtain leave of court before pleading a request for punitive

damages.  [D.E. 31 at 21-22].  In its reply, however, Diamond acknowledges that Plaintiffs need not comply with this statute, given that this is a federal suit based on diversity jurisdiction.  [D.E. 36 at 6]; *see also Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1299 (11th Cir. 1999) (holding that the pleading requirements of Fla. Stat. § 768.72 are inapplicable in federal diversity cases, and reversing lower court's dismissal of a punitive damages claim for failure to comply with those requirements), *vacated in part and rehearing on other grounds*, 204 F.3d 1069 (11th Cir. 2000).

Therefore, the only ground on which Diamond moves for dismissal of the punitive damages claim in Count III is Plaintiffs' alleged failure to satisfy the pleading requirements of Rule 12(b)(6) and particularity requirements of Rule 9(b). However, in light of the fact that this Court recommends that Plaintiffs re-plead their substantive claims, Diamond's motion to dismiss the punitive damages claim should be denied as moot.

### E.   *Claim for Attorneys' Fees*

Plaintiffs effectively concede that they have no basis to demand attorney's fees but, nevertheless, attempt to "reserve their right to make a later motion upon final judgment for attorneys' fees." [D.E. 25 at 19].  The Court will treat Plaintiffs' claim for attorneys' fees as being withdrawn and, therefore, Diamond's motion to strike Plaintiffs' claim for attorneys' fees should be denied as moot.  Plaintiffs' amended complaint shall refrain from asserting such a demand without a good faith basis to do so.

### III.   CONCLUSION

Diamond fails to persuade this Court that Canada is a more convenient forum or that this matter should be transferred to an alternative district court.  However, the Court finds that Plaintiffs' complaint fails to comply with Rules 8(a)(2) and 10(b) and, therefore, recommends that the complaint be dismissed with leave for Plaintiffs to re-plead their claims in compliance with those Rules, as well as Rule 9(b)'s heightened pleading requirement.

For the foregoing reasons, it is hereby recommended as follows:

1.      Diamond's Motion to Dismiss [D.E. 31] on *Forum Non Conveniens* grounds or, in the alternative, to transfer venue should be **DENIED**.

2.      Diamond's Motion to Dismiss Counts I-II should be **GRANTED** with leave to amend.  The Motion to Dismiss Count III is **DENIED AS MOOT**.

3.      The remainder of Diamond's Motion should also be **DENIED WITHOUT PREJUDICE**.  Diamond may re-assert these arguments, if appropriate, in response to Plaintiffs' amended complaint.

4.      Plaintiffs' amended complaint shall be filed in fourteen (14) days, but which period shall be tolled if objections to this Report and Recommendation are timely filed.  Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the

parties from attacking on appeal the factual findings contained herein, if any. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 8th day of March, 2011.

        /s/    *Edwin G. Torres*        
EDWIN G. TORRES
United States Magistrate Judge